No. 13-11297

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**MARSHALL HUNN, Agent of Hunn Designs,**

**Plaintiff - Appellant**

**v.**

**DAN WILSON HOMES INCORPORATED; DAN WILSON; BEN J. LACK**

**Defendants - Appellees**

**Appeal from the District Court
of the Northern District of Texas, Lubbock Division.**

**BRIEF FOR APPELLLANT MARSHALL HUNN**

---

Dorsey L. Baker
Attorney for the Plaintiff
bakerlaw@yahoo.com
4603 11th Street
Lubbock, TX 79416
(806) 792-5868 (Office)

Fernando M. Bustos
fbustos@bustoslawfirm.com
Dustin N. Slade
dslade@bustoslawfirm.com
Attorneys for the Plaintiff
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976

## Certificate of Interested Persons

### Case No. 13-11297

**MARSHALL HUNN, Plaintiff-Appellant**

**v.**

**DAN WILSON HOMES, INC.;**
**DAN WILSON; AND BEN J. LACK**
**Defendants-Appellees**

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Parties:**

| | |
|---|---|
| Plaintiff-Appellant | Marshall Hunn, dba Hunn Designs |
| Defendant-Appellee | Dan Wilson Homes, Inc. |
| Defendant-Appellee | Dan Wilson |
| Defendant-Appellee | Ben J. Lack |

**Attorneys**:

For Plaintiff-Appellant

Dorsey L. Baker
Dorsey L. Baker Law Office
4603 Eleventh Street
Lubbock, Texas 79416

Fernando M. Bustos
Aaron M. Pier
Dustin N. Slade
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980

ii

For Wilson Defendants-
Appellees

William P. Lane
Dustin R. Burrow
Marion Sanford III
McCleskey Harriger, Brazill &
 Graf, L.L.P.
P.O. Box 6170
Lubbock, Texas 79493-6170

For Lack Defendant-
Appellee

Andrew B. Curtis
Elizabeth G. Hill
Craig, Terrill, Hale, Grantham, L.L.P.
First Bank Centre
9816 Slide Rd., Suite 201
Lubbock, Texas 79424

/s/Dorsey L. Baker
Attorney of Record for Plaintiff
Marshall Hunn

**<u>Statement Regarding Oral Argument</u>**

This is an intellectual property case involving an abused entrustment in which a large custom home builder judicially admitted to a course of action to induce a former employee-draftsman to take and complete residential designs of computer files entrusted to him by his former employer.   Oral argument is requested because this case draws into question several issues in need of clear resolution for the guidance of the courts, lawyers as well as builders, architects, employers and employees.   One of those issues is whether the Copyright Act preempts a misappropriation claim for the taking of computer design files *when joined* with a claim for breach of fiduciary duty of a former employee *and* "knowing participation" in that breach by the custom home builder.

An issue of first impression for resolution is the proper interpretation, in a *civil case*, of the phrase "exceeding authorized access" of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (g), which is raised by the employee's accessing a computer and copying of AutoCAD computer files for use after termination of his employment for his own benefit and that of the custom home builder.   And yet another issue of first impression within this circuit is the extent of an architect's protection under the Lanham Act against a builder and a designer who falsely designated the former employee as the source of architectural drawings delivered to the City of Lubbock for a building permit and to numerous subcontractors for

cost and construction purposes.  On each of these matters, the District Court below summarily dismissed Plaintiff's claims.  Oral argument is respectfully requested and submitted to be helpful in light of need for guidance on these issues and in light of the complexity and commercial importance of the business and intellectual property matters arising in this case.

# **Table of Contents**

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ..................................................... iv

Table of Contents ...................................................................................... vi

Table of Authorities ................................................................................ vii

Statement of Jurisdiction........................................................................... 1

Statement of Issues Presented for Review ............................................. 1

Statement of the Case................................................................................ 2

The Relevant Facts...................................................................................... 3

The Procedural History and the Rulings To Be Reviewed....................... 15

Standard of Review................................................................................... 18

Summary of Argument ............................................................................ 19

Argument..................................................................................................... 20

      Judgment for Wilson on Count IV for "Breach of Confidential and
      Fiduciary Relationships and Misappropriation" Was Error........................ 20

      The District Court Misconstrued the Computer Fraud and Abuse Act,
      18 U.S.C. § 1030(g) and Declined to Follow this Court's Controlling
      Decision. .................................................................................................. 29

      The District Court Erred in its "Take Nothing" Judgment on the
      Covenant Not to Complete Solicit As It Was in Full Accord and
      Compliance With The Texas Statute and the Decisions of the Supreme
      Court of the State. .................................................................................... 32

      Judgment on Plaintiff's Lanham Act Claim Was Clearly Erroneous. .......... 36

Conclusion ................................................................................................ 38

Certificate of Service ............................................................................... 41

Certificate of Compliance ........................................................................ 42

# **Table of Authorities**

## *Cases*

*Alcatel USA, Inc. v. DGI Technologies, Inc.,*
    166 F.3d 772 (5th Cir. 1999) ..................................................... 18, 19, 26, 27

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 255 (1986). ...........................................................................19

*Briarpatch Ltd L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) .........................................................................28

*Daniel v. Falcon Interest Realty Corp.,*
    190 S.W.3d 177 (Tex. App.—Houston [1st Dist.] 2005, no pet.)................22

*Dastar Corp. v. Twentieth Century Fox,*
    539 U.S. 23 (2003).........................................................................................38

*Denson v. Dallas County Credit Union,*
    262 S.W.3d 846 (Tex. App.—Dallas 2008, no pet.); ...................................25

*E.I. du Pont de Nemours Powder Co. v. Masland,*
    244 U.S. 100 (1917)......................................................................................39

*Gen. Universal Sys., Inc. v. Lee,*
    379 F. 3d 131 (5th Cir. 2004) ......................................................................38

*Helm Cos. v. Shady Creek Hous. Partners, Ltd.,*
    No. 01-05-00743-CV, 2007 Tex App LEXIS 5902 (Tex. App.—
    Houston [1st Dist.] July 26, 2007, pet. denied)...........................................25

*Int'l News Serv v. Associated Press,*
    248 U.S. 215 (1918)......................................................................................26

*Johnson v. Brewer & Prichard, P.C.,*
    73 S.W.3d 193, 201-02 (Tex. 2002);..................................................... 22, 27

*Johnson v. Jones,*
    149 F.3d 494 (6th Cir. 1998) ......................................... 18, 20, 36, 37, 38, 39

*K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.,*
    314 S.W.2d 782 (Tex. 1958) .......................................................................27

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,*
    160 S.W.2d 509 (Tex. 1942) ................................................. 18, 19, 21, 24, 27

*Kirby v. Cruce,*
    688 S.W.2d 161 (Tex. App.—Dallas 1985) ...................................24

*Lazer Spot, Inc. v. Hiring Partners, Inc.,*
    387 S.W.3d 40 (Tex. App.—Texarkana 2012, pet. denied).........................32

*Mabrey v. Sandstream, Inc.,*
    124 S.W.3d 302, (Tex. App.—Fort Worth 2003, no pet.); ..........................24

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
    289 S.W.3d 844 (Tex. 2009). ............................................... 33, 34

*Marsh USA Inc. v. Cook,*
    354 S.W.3d 764 (Tex. 2011) ...........................................35

*Miller Paper Co., v. Roberts Paper Co.,*
    901 S.W.2d 593 (Tex. App.—Amarillo 1995, no writ). ..............................35

*Navigant Consulting, Inc. v. Wilkinson,*
    508 F.3d 277 (5th Cir. 2007); .............................................. 22, 25

*NCH Corp v. Broyles,*
    749 F.2d 247 (5th Cir. 1985) ...........................................35

*Rugen v. Interactive Bus. Sys.,*
    864 SW.2d 548 (Tex. App.—Dallas 1993, no writ.)....................................27

*United States Sporting Prod., Inc. v. Johnny Stewart Game Calls, Inc.,*
    865 S.W.2d 214,  (Tex. App.—Waco 1993, writ denied)............................26

*United States v. John,*
    597 F.3d 263 (5th Cir. 2010) ...................................... 18, 19, 30, 31

*Villarreal v. Wells Fargo  Brokerage Servs., L.L.C.,*
    315 S.W.3d 109 (Tex. App.—Houston [1st Dist.], 2010)............................24

**Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .............................. 1, 16, 20, 31

Copyright Statute, 17 U.S.C. § 101 .........................................16

Judicial Code, 28 U.S.C. § 1291 .................................................................. 1

Lanham Act, 15 U.S.C. § 1125 ....................................................... 2, 16, 21

Tex. Bus. & Com. Code § 15.50(a) ........................................................ 34

### *Rules*

Fed. R. App. P. 28 ..................................................................................... 3

Fed. R. Civ. P. 56 ................................................................................... 17

Fed. R. Civ. P. 59 ................................................................................... 17

## Statement of Jurisdiction

Plaintiff, Marshall Hunn, appeals a final judgment entered by the U.S. District Court for the Northern District of Texas, Lubbock Division on four counts of his civil complaint.  This Court has jurisdiction pursuant to the Judicial Code, 28 U.S.C. § 1291.

## Statement of Issues Presented for Review

Issue 1.  Whether the trial court erred in granting summary judgment to Defendants-Appellees Dan Wilson and Dan Wilson Homes, Inc. (collectively "Wilson") on Plaintiff-Appellant Marshall Hunn's ("Hunn") claim of their "knowing participation" in breaches of the fiduciary duties of Defendant-Appellee Ben Lack ("Lack") employee—breaches that included misappropriation of computer files for their benefit and in competition with Hunn, Lack's former employer.

Issue 2.  Whether the trial court erred in granting summary judgment to Lack on a claim of "exceeding authorized access" to a protected computer under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (g) when he accessed and copied AutoCAD computer files containing partially completed architectural designs belonging to Hunn for use in competition with Hunn and where he had judicially admitted that his access to the computer files was "…all for the benefit of HUNN."

1

Issue 3.  Whether the trial court erred in granting summary judgment to Lack on a claim of breach of a written agreement that he would not, for a period of 2 years after termination of his employment, solicit Hunn's customers for the design of custom homes.

Issue 4.  Whether the trial court erred in granting summary judgment to Defendants Appellees Wilson and Lack on Hunn's claim for "false designation of origin" under the Lanham Act, 15 U.S.C. § 1125, where they misappropriated Hunn's AutoCAD computer files containing partially completed architectural designs, designated Lack as the source of origin of said designs in these files and submitted the designs to the City of Lubbock, Texas for a building permit and to numerous subcontractors for the construction of the architectural designed residence.

## Statement of the Case.

This is an appeal from a partial summary judgment in an intellectual property case that includes an "abused entrustment" of a residential design business and confidential information induced by a large customer home builder. That builder, Wilson judicially admitted to a "course of action" to induce Lack, a computer draftsman formerly employed by Hunn, to complete drawings of the residential design business that was entrusted to him by Hunn—a course of action that included "knowing participation" in that breach, misappropriation of Hunn's

computer files, improper access to a protected computer and a false designation of origin prohibited by the Lanham Act. Claims of copyright infringement, breach of fiduciary duty against Lack and breach of contract claims against Lack and Wilson were tried to the Court in early November 2013. Judgment has not yet been rendered on these claims.

This brief, pursuant to Fed. R. App. P. 28, sets forth relevant facts which are followed by the procedural history and standard of review, identification of the summary rulings to be reviewed, and Hunn's argument.

## The Relevant Facts

Hunn is an individual who obtained a Master of Architecture Degree from Texas Tech University in 1999. ROA.2105. His work history included substantial employment in providing design services and construction work for others until the year 2007 when he opened his own architectural design firm in Lubbock, Texas. ROA.2105. The firm's office is secured with limited access through two regular entry doors and an overhead door at the rear which are maintained in a locked condition when no one is present. ROA.2106. Keys are provided to employees permitting their access. ROA.2106.

Substantially all architectural design work of the firm is performed with computers that are networked to a server storing architectural designs for each project. ROA.2106. A Computer Aided Design program "AutoCAD" is used by

3

the firm's designers to create and develop the designs for architectural structures by initiating a separate design file for each construction project which includes residential, commercial and church design projects. ROA.2106.  The firm used version 2008 of the AutoCAD program throughout the relevant time period. ROA.2106.

All computer files are protected against access from unauthorized personal by the use of password identities, personal surveillance and locks on the premises when Hunn's office is not open. ROA.2106.  The digital CAD files containing information pertaining to the architectural designs of each project comprises Hunn's confidential property and trade secrets. ROA.2106 .  Moreover, they are developed with an investment of money, skills and labor in exchange for salaries paid by Hunn to each designer-employee. ROA.2108.

When finalized, Hunn's CAD files contain the final construction drawings for each project which may be printed and delivered to a customer, home buyer or builder with a limited license to obtain a building permit and to construct a residence at the specified address. ROA.2107.  However, in addition to the finalized plans, each AutoCAD file contains additional data, concepts and information pertaining to matters of design. ROA.2107.  For example, the AutoCAD file of a residence, when opened with the AutoCAD program has "layers" of design information that facilitate revisions, modifications and

rearrangement of any part of the design including the floor-plan, framing, the roof design, etc. ROA.2107. These computer AutoCAD files remain the property of Hunn for later modification, rearrangement, and sizing of the structure for reuse and resale to the customer if later desired. ROA.2107. The digital AutoCAD files for the construction of the residences involved in this lawsuit have never been provided to any outsider by Hunn, and the Appellees in this case were never given permission to use, modify or complete the designs for the residences in question. ROA.2107. Indeed, they were specifically advised that any use of the files would constitute infringement of Hunn's federally protected rights under the Copyright Act and a misappropriation of his property. ROA.1832, Letter of Plaintiff's lawyer. Hunn's AutoCAD files are accessible to his employees, but only for the limited purposes for Hunn's benefit. ROA.2107, ¶9. Lack, a former employee of Hunn, judicially admitted such restricted access. ROA.253, ¶ 17.

Hunn was engaged in interstate commerce in the design of residential, commercial and church property in the states of Texas, New Mexico and Montana. ROA.2108. In addition, he maintains a computer website, "HunnDesigns.com" accessible throughout the United States via the internet and email. ROA.2108.

In June of 2010, Hunn hired Lack as his "Lead Draftsman." Lack did not have a college degree in architecture, but he did have an associate's degree in computer aided drafting using AutoCAD, and some design experience. ROA.1918.

His written job duties included:  1) supervision of drafting and production departments; 2) CAD standard installation and maintenance; 3) management of spec clients; and 3) sales assistance and design as needed. ROA.1829.  Attached to Lack's employment letter was a non-solicitation agreement, pursuant to which Lack agreed that he would not solicit Hunn's clients for a period of two years after termination of his employment agreement. ROA.1831.  His annual compensation was expected to be $40,300 based on a fixed salary, and a bonus premised on the completion of 45 projects per year. ROA. 1929.  Approximately a year later, Lack was entrusted with substantially all of Hunn's residential design business in exchange for a substantial pay raise.  Lack testified:

> Q.  Well, wasn't there an understanding that you would take over all of the residential design and sales and handle that portion of the business?
> A.  I would --
> Q.  When you got that raise?
> A.  Yeah, I would handle the residential designs, yes.
> Q.  And so that entire business was entrusted to you at that time? And when I speak of at that time, we are talking about the month of May, 2011.
> A.  I don't know that it was entrusted fully to me.  I mean, there were still residential design done by Zac Garth and Marshall Hunn during that time as well, as help was needed.  So I didn't carry the full workload.  Majority yes, but not the full.  (emphasis added).

ROA.1919-2020.

    After this entrustment, Hunn received additional residential construction design projects from Wilson, a builder of residential custom homes in Lubbock,

6

Texas.  ROA.1858-9.  Six additional contracts for residential construction received

from Wilson were:

| Project No. | Residence | Date of Contract | Estimated Income | Status |
|---|---|---|---|---|
| 133 | McGee (Winder) | 9/1/11 | $3,935.00 | CD [construction documents] |
| 134 | Brown Residence | 9/7/11 | $4,678.75 | CD [construction documents] |
| 137 | Wilson Showcase | 9/20/11 | $4375.00 | Initial design  (hand sketch |
| 138 | Jeffers Residence | 9/22/11 | $5270.00 | Waiting on client to approve design |
| 139 | Bradley  Residence | 9/30/11 | $5625.00 | Working on 2nd sketch |
| 140 | Scott Residence | 10/4/11 | $4687.50 | Working on 1st sketch |

ROA.1804.

Approximately one month after these six contracts were initiated by Wilson,

Lack advised Hunn of his decision to terminate his at-will employment.  On

October 5, he advised Hunn that

> ...he was going to become an in-house designer for Dan Wilson
> Homes.  He indicated that Mr. Wilson had offered him a six-figure
> income.  He told me [Hunn] that he needed to accept the job for his
> family.  I [Hunn] asked him to let me think about the situation and I
> would meet with him the following morning   He did not say he was
> going to accept the position but was seriously considering it.

ROA.1803.

The above quotation is taken from Hunn's written chronology of facts [ROA.1803-

1807] pertaining to Lack's resignation of employment, and they were taken at or

near the time of the incident. ROA 1457.   This chronology includes Wilson's

assertion that

> …"Ben is going to start up his own company and compete against you."  He indicated that he wanted Ben to finish up his (Mr. Wilson's) projects since he was familiar with them and had a good relationship with the clients.

ROA.1804.

About the same time, Lack accessed Hunn's computer, copied four AutoCAD files

that were created for the Wilson contracts and transmitted them to Gilbert

Gutierrez, a business associate in Keller, Texas for conversion to a different

version of AutoCAD.  Lack admitted:

> **REQUEST FOR ADMISSION NO. 44**. Admit AutoCAD file entitled Brown.dwg produced by Defendant Lack in this lawsuit was converted from AutoCAD program version 2008 to AutoCAD program version 2006 by Gilbert Gutierrez III on October 11, 2011 at the request of Defendant Lack.
> **RESPONSE**: Admit.

ROA. 2054.

Similar admissions were made with respect to Hunn's AutoCAD files for the

Jeffers residence and the McGee residence.  RESPONSE TO REQUEST FOR

ADMISSION NO. 46. (Jeffers) ROA.2055 and RESPONSE TO REQUEST FOR

ADMISSION 48 (McGee). ROA.2049.

Lack stated the reasons for this copying at his deposition:

Q. What was the reason of sending these down to Gilbert to have them converted? [CAD version]

8

A. I didn't have 2008 at home and I guess the versions I had of them were 2008 and I had no way of converting them back.

Q. Why did you want to convert them?

A. To finish the work so that, I guess, these could be completed.

Q. So as of October the 5th you had an understanding that you were going to complete those drawings on behalf of Dan Wilson; is that correct?

A. Yes, sir, that's -- I believe. I don't remember the exact date I contacted Marshall, but after that date I had that assumption, yes.

Q. Well, my understanding and recollection, Mr. Lack, is that on the 5th of October at around 3:00 o'clock you made a telephone call to Marshall --

A. Yes.

Q. -- and told him you were contemplating leaving; is that correct?

A. I don't know that I was contemplating it. I believe I had already decided that that's what I was going to do. (emphasis added).

ROA.1923, Tr. pp. 27-28.

Thus, at the time of this access and copying of Hunn's files, Lack admitted

to the existence of an agreement to finish the files for Wilson at a date when he had

"already decided" to terminate his employment. He further testified:

Q. I just want to make sure I got this absolutely clear in the record. When you sent these files down to Keller to get them converted from 2008 to 2006, you at that time had an agreement or an understanding with Dan Wilson that you would continue to work and finish the drawings?

A. Yes. I would, yes.

Q. And he agreed to that?

A. I believe so, yes. (emphasis added).

(ROA.1925, tr. p. 34.)

and

Q.   (BY MR. BAKER) My understanding is, Mr. Lack, that on Monday morning you brought the files back?

9

A.  Yes, sir.
Q.  <u>Now at that time did you advise Ms. Hunn or Mr. Hunn that you had taken their files and sent them down to Keller for conversion?</u>
A.  <u>No.</u>
Q.  Did you tell them you had kept copies of the AutoCAD files?
A.  I assumed it was an understanding just because they knew I was working on the stuff at home, that I had them there.
Q.  <u>But you didn't tell them that you had sent them down to --</u>
A.  <u>No, sir, I did not.</u>
 Q.  But now you did return each and every single paper document you had?
A.  Yes, sir.
Q.  I believe you had that conversation in the morning and I believe that you did discuss with them the status of the files that you were working on, on behalf of Hunn?
A.  Yes, just Dan Wilson Homes.
Q.  Okay.  And you told them the status of each of those files?
A.  Yes, sir.
Q.  <u>But you didn't tell them that you were continuing to work on the files?</u>
A.  <u>No, sir.  They didn't ask.</u>
Q.  Is there a reason you didn't?
A.  No.  Out of all the questions being asked, it never came up and when they were done they were done and <u>we parted ways</u>, and, you know, that was pretty much it.  (emphasis added).

(ROA.1925, deposition pages 34, 35.)

The date on which "we parted ways" was October 10, 2011 when Lack "ripped his sample plans off the wall…and [was] gone,"  some five days after the first AutoCAD files were copied and then converted.  ROA.1804.

The very next day, a letter from Hunn's lawyer was delivered to Defendants advising them that their action constituted copyright infringement and misappropriation and it requested they consult with their lawyer.  ROA.1832.

10

When inquiry was made of this letter, Lack responded:

> Q. And then there is a word, "misappropriation". Do you see that in the last line -- next to the last line of Paragraph 4?
> A. Yes, sir.
> Q. Did that trouble you at all?
> A. No, sir.
> Q. So you felt you were free to take those CAD drawings and finish them?
> A. They were due monies for work completed, yes. <u>So, as it was agreed that between me and Mr. Wilson</u> that they would be paid for the work that they were done --that they had done on those plans then, yes, I – that didn't bother me.
> Q. <u>So you had an understanding before you even left Hunn Designs that they would be paid at the rate of $1.25 or whatever the rate was?</u>
> A. <u>Yeah, whatever their invoiced rate was.</u>
> Q. What did you do with this letter, if anything, after you received it?
> A. I read it and, in my experience, people send out letters all the time as <u>a scare tactic</u> and that's what I saw it as and waited for anything further to develop, if it did.
> Q. Did you consider discussing the letter with a lawyer?
> A. No, sir, not at that time.
> Q. You know, in the second paragraph there is a statement: "I strongly suggest you consult with your attorneys in regards to this letter."
> A. Yes, sir.
> Q. You didn't feel that was worthwhile?
> A. No, sir, not at that time. (emphasis added).

(ROA. 1926, tr. pp. 38-40.)

Wilson did not deny the his agreement with Lack. Indeed, his recollection of the facts differ *only in the date of his engagement with Lack*, which, according to Wilson, began *after* termination of Lack's employment with Hunn. However, Wilson judicially admitted that Wilson conceived of the "course of action"

11

resulting in the misappropriation and sought to justify it on the alleged grounds that

Hunn refused to timely complete the designs. Wilson pleaded:

> 62. Given notice of Hunn's impending breach of the agreement to draft the drawings in a timely manner and that no one at Hunn Design had any knowledge related to the drawings in progress, Dan Wilson Homes, Inc. determined that the best <u>course of action</u> was to pay Lack to complete the two drawings that were near completion while paying Hunn Design the rate previously agreed upon as if Lack remained employed at Hunn Design and also to fairly compensate Hunn Design for any work performed on drawings that were not near completion. (emphasis added).

ROA.1861, Wilson Second Amended Answer.

Yet, in spite of this admission, Wilson did not file a claim for a breach of contract,

nor the affirmative defense of justification. Wilson could not have truthfully done

so as Hunn tendered performance of the contracts after Lack's termination. Hunn

testified at his deposition:

> Q.   What alternatives did you provide?
> A.   I told him that we would finish the offices in the house -- or finish the projects in our office, that I would finish them. If he wasn't comfortable with me working on them, that I would put Zach Garth on the projects.
> Q.   Did you and he have a conversation -- part of that conversation, did you discuss when you'd be able to get to them?
> A.   He asked when we could get the projects completed, yes.
> Q.   Okay. What did you -- that was during this time frame we are talking about?
> A.   Uh-huh.
> Q.   How did you respond?
> A.   I think I responded along the lines of I wasn't 100 percent sure when I could get everything --get to everything.
> Q.   Okay. And why did you tell him you weren't 100 percent sure when you could get to everything?

> A.   Because Ben Lack quit.  He left us with six projects that we had
> pending with Dan Wilson and another eight, nine, ten, eleven projects
> pending with other clients.  I had to go back to all those clients, find
> out the status of all those projects, where we were at on them, what
> was promised out, when the deliveries --deliverables were going to be
> at.  I mean, they put me in a very difficult position,….

ROA.1988, tr. p. 89. *See also* ROA.1805, Chronology, October 11, 2011.

However, Wilson did not accept Hunn's offer and Lack judicially admitted his

agreement to and participation in this "course of action" initiated by Wilson.  Lack

pleaded:

> 46.  <u>Wilson Homes, Inc. retained the services of LACK to complete
> two drawings that were near completion.</u> Wilson Homes advised that
> Hunn Design had breached the agreement to complete the drawings in
> question as they were not assigned to a competent employee of Hunn
> Designs after LACK's departure. (emphasis added).

ROA.1898, Lack Seconded Amended Answer.

Appellee's copying and subsequent use of these files was not innocent.

Significantly, Lack judicially admitted that his access to Hunn's files was to be "all

for the benefit of HUNN," *i.e.*, he pleaded:

> 17.  LACK is without sufficient knowledge or information after
> reasonable inquiry as to the truth of the allegations contained in
> Paragraph 18 of the Amended Complaint and therefore, denies same.
> However, LACK did not take any items from the HUNN office. The
> files complained of were on LACK's personal computer as that is the
> computer that LACK was using on the projects so that he could work
> on the projects while not in the HUNN office, <u>all for the benefit of
> HUNN</u>. (emphasis added).

ROA.1892.

Clearly, he well knew his copying of Hunn's computer files for use in competition with Hunn exceeded his authorized access to those computers.

Appellees' culpability is also demonstrated by their receipt of and failure to respond to the letter of Hunn's counsel requesting they seek counsel regarding their copyright infringement and their misappropriation of Hunn's files. ROA.1832. See also ROA. 1926, Lack dep. tr. pp. 38-40.

After copying of the files and resignation of his employment, Lack completed Hunn's design using an AutoCAD program and delivered a copy of the drawings to Wilson. As Wilson admitted:

> Q.   And so what you did use for the final design for your City permit and for construction of these residences was a final design you received not from Hunn, but from Mr. Ben Lack. Is that true?
> A.   Final drawings.
> Q.   Yes.
> A.   Yes.

ROA.1937, p. 18.

Wilson also admitted that the drawings completed by Lack using Hunn's files were submitted to the City of Lubbock for procuring a permit for construction of the Brown Residence, Response to Request for Admission Nos. 1-3, ROA.2057-8; the McGee Residence, Responses to Requests for Admissions Nos. 4-6, ROA.2058-9; the Jeffers Residence, Responses to Requests for Admissions Nos. 28-30, ROA.2089. See also, drawing of Brown Residence, Exh. 5, ROA.2064;

drawings of McGee Residence, Exh. 7, ROA.2072; Drawings of Jeffer's Residence, Exh. 10, ROA.2093.

The drawings completed by Lack were submitted by Wilson to the City of Lubbock in connection with the Requests for a Building Permit. They contained the following claim of ownership and designation of origin.

PLAN USE AGREEMENT

By using these plans builder / owner agrees to the following: <u>These plans are the property of Q Home Designs, and are not to be reproduced, traced or reused for construction without the written permission of Q Home Designs.</u> These plans are intended to provide the necessary construction information to build this structure. Builder / owner shall verify and check all aspects prior to any construction. Any jobsite changes will void Designer's liability. Designer's liability not to exceed fee for plans. Copyright© 2008 Q Home Designs.(emphasis added).

Exhibit 5, ROA.2064; Exh. 7, ROA.2072; Exh. 10, ROA.2093.

Lack pleaded that he was the owner of Q Home Designs, which was Lack's assumed name. ROA.1899, ¶14. After issuance of building permits, Wilson admitted he constructed the McGee, Brown and Jeffers residences with the residential designs completed by Lack. See Wilson's Response to Request for Admissions, Nos. 1-6, 28-30; ROA. 2057-2059 and ROA.2089.

## **The Procedural History and the Rulings To Be Reviewed.**

In January and February of 2012, Hunn received copyright registrations of four of the residential designs for the Wilson contracts, three of which Lack left in the AutoCAD files of Hunn's computers on termination of his employment. All

15

registrations were filed as or supplemented to be files as a "work for hire." ROA.455, McGee Residence; ROA.464 Brown Residence; ROA.466, Wilson Showcase; ROA.468, Jeffers Residence.   On May 24, 2013, Hunn filed his Original Complaint in this action. ROA.18 and on December 6, 2012 he file his Second Amended Complaint which contained eight Counts, three of which were premised upon federal law. ROA.424.  The federal law claims included Count I for copyright infringement of the four architectural designs under the Copyright Statute, 17 U.S.C. § 101 et seq.; Count II for false designation of the origin of the drawings submitted to the City of Lubbock and subcontractors under the Lanham Act, 15 U.S.C. § 1125; Count VII for computer fraud under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (g).  The five remaining claims were state law claims: Count III, a breach of contracts by Wilson who engaged Lack to complete the six contracts; Count IV, breach of fiduciary duties by Lack together with Wilson's "knowing participation" in his breaches; Count V, breach of a covenant not to solicit Hunn's customers; Count VI, interference by Wilson with Lack's at-will employment contract; and Count VIII, conspiracy. ROA.424.

On September 23, 2013, in response to Appellees' motion, the District Court entered a final "JUDGMENT PURSUANT TO RULE 54(b) to Wilson on:

a) Hunn's claims against Wilson for his "knowing participation" as joint tortfeasors in Lack's breach of his fiduciary duties, (Count IV); and claims

16

b) under the Computer Fraud and Abuse Act Count VII;

c) for breach of the covenant not to compete, Count V;

d) under the Lanham Act, Count II;

e) for tortious interference with the employment agreement, Count VI; and

f) ROA for conspiracy, Count VIII. ROA.2451.

In addition, the Court entered a final "JUDGMENT PURSUANT TO RULE 54(b) against Hunn on his claims against Lack for:

a) Computer Fraud and Abuse, Count VII;

b) breach of his covenant not to compete, Count V;

c) violation of the Lanham Act, Count II;

d) conspiracy, Count VIII. ROA.2451.

Pursuant to Fed. R. Civ. P. 56(a), the District Court entered an Order dated September 23, 2013 stating "the reasons for its grant of the motion. *This Order, ROA.2413, and the final judgment ROA.2451 are presented for review.* Plaintiff also filed a motion to alter and/or amend the judgment pursuant to Fed. R. Civ. P. 59, ROA.2479 and such was denied. ROA.3219.

The procedural history of this case includes Hunn's earlier motion for summary judgment on the issues of Count IV against Lack for "breach of fiduciary relationship, against Wilson for "knowing participation" in said breaches as joint tortfeasors;" against all Appellees on his claim for violation of the Computer Fraud

17

and Abuse Act, Count VII and conspiracy, Count VIII. ROA.597. Hunn's Motion was denied on the grounds that genuine issues of fact existed—issues asserted by the Defendants. ROA.1127.  Surprisingly, all of these fact issues disappeared when Wilson later filed his motion and judgment was granted!

As in his earlier motion, Hunn does not contend that there are issues of fact. Instead, Hunn contends that the District Court failed to consider certain relevant evidence, the judicial admissions of record, and that it miscomprehended the law of the State of Texas, namely, *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509 (Tex. 1942), *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009); of the decisions of this Court, namely,  *United States v. John*, 597 F.3d 263 (5th Cir. 2010), *Alcatel USA, Inc. v. DGI Technologies, Inc.* 166 F.3d 772 (5th Cir. 1999); and of the Sixth Circuit Court of Appeals, *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998). As a matter of law, Hunn, not Appellees, was entitled to judgment on these claims.[1]

## Standard of Review

On appeal, a grant of a summary judgment is reviewed *de novo*.  Summary judgment is appropriate only if the pleadings, discovery and materials on file

---

[1] Hunn does not appeal the denial of his conspiracy claim for reasons of limitations on length, and because Wilson's liability is clear from his "knowing participation" in Lack's breach of fiduciary duties.

18

demonstrate that there is no genuine issue of fact and the moving party is entitled

to judgment as a matter of law.  In ruling on a motion for summary judgment,

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## Summary of Argument

With respect to Count IV, the District Court miscomprehended Hunn's claim

against Wilson as a claim for a breach of Wilson's fiduciary duties and ignored the

actual claim of "knowing participation" in Lack's breach of his fiduciary duties—a

claim fully supported by the facts and by the law of the State of Texas, i.e.,

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509 (Tex. 1942).   In

addition, the District Court did not comprehend the meaning and context of the

claim of misappropriation as this Court announced in *Alcatel USA, Inc. v. DGI*

*Technologies, Inc.,* 166 F.3d 772 (5th Cir. 1999).   As a result, the District Court

improperly granted judgment for the Appellees.

With respect to Count VII, the District Court erred by ignoring this Court's

interpretation of "*exceed* authorized access" in *United States v. John*, 597 F.3d

263, 272-73 (5th Cir. 2010) in its application of the Computer Fraud and Abuse

Act, 18 U.S.C. § 1030 and it improperly dismissed Hunn's claim that Lack

exceeded his admitted, limited authorized access to Hunn's computer when he copied Hunn's files and used them for his personal benefit and that of Wilson.

With respect to Count V for breach of a covenant not to compete, the District Court erred by failing to recognize a) Hunn's implied, essential promise to provide access to his confidential information and trade secrets in his "enforceable agreement" of hire and b) Lack's ancillary promise not to solicit his customers for a period of two years.

With Respect to Count II for violation of 15 U.S.C. § 1125, the District Court erred in dismissing a claim of "false designation of origin" on grounds of a lack of showing of an "effect on interstate commerce" of "likelihood of confusion" where, on substantially identical facts, the Sixth Circuit found liability and concluded one could not even "imagine how a designation of origin could be more false or more likely to cause confusion." *Johnson v. Jones*, *supra,* 149 F.3d at 502-3.

## Argument

### Judgment for Wilson on Count IV for "Breach of Confidential and Fiduciary Relationships and Misappropriation" Was Error.

This Count was dismissed against Wilson on the grounds that he had no fiduciary relation with Hunn. The District Court stated:

> …it does not necessarily follow that such knowledge would create a fiduciary relationship that could be breached. *Thus, the Court finds that Hunn cannot maintain a cause of action against the Wilson*

20

*Defendants for any alleged breach of fiduciary duty.* As argued by the Wilson Defendants, and as the case law cited above indicates, neither Wilson nor Dan Wilson Homes, Inc. had any fiduciary relationship with Plaintiff as mere contracting parties to a contract with Hunn.

No genuine issues of material fact preclude an entry of summary judgment on this claim in favor of Defendants Wilson and Dan Wilson Homes, Inc.

ROA.2427 (emphasis added).

The judgment was error because Hunn's claim was not premised on a Wilson fiduciary relationship or their breach thereof. Instead, Hunn's claim, yet to be considered, was premised on the *Kinzbach Tool Co. v. Corbett-Wallace Corp.* 160 S.W.2d 509, 514 (Tex. 1942) holding which found liability for *"knowing participation" in another's breach of his fiduciary duty.* Hunn's claim was clear:

50…..Defendants Dan Wilson and Dan Wilson Homes, Inc., *knowingly participated in, induced, and jointly aided and abetted Defendant Lack's breaches of his confidential and fiduciary duties* by one or more of the following activities: 1) by encouraging him to set up his own business in competition with Plaintiff, 2) by inducing him to use the misappropriated CAD files and property of Plaintiff Hunn and to use those files to complete said architectural plans, to infringe his copyrights, to fraudulently misrepresent the source of said architectural plans to the City of Lubbock and in interstate commerce and to improperly profit from the construction of residences premised on Plaintiffs files and copyrights; 3) by offering him a compensation that was in the six figures which they knew was "too much money" for Defendant Lack to pass up. *In doing so, Defendants Wilson and Dan Wilson Homes, Inc. became joint tortfeasors with Defendant Lack in breach of his confidential and fiduciary duties.*

(emphasis added). ROA.438.

21

Wilson's participation was demonstrated, first by defining, as a matter of law, Lack's fiduciary duties as defined by the Texas Supreme Court and his breaches thereof *followed* by unequivocal evidence of Wilsons's "knowing participation"—participation admitted by the sworn testimony of the Defendant Lack and by Wilson's judicial admissions. Hunn, not Appellees, were therefore entitled to judgment!

Consider first, the fiduciary duties of employee Lack. As a matter of law, they included the duty of the employee not to compete with the principal on his own account or for the account of others while working for the principal, not to solicit the employer's customers while still working for his employer, not to carry away certain information, not to engage in a course of conduct designed to hurt the employer and the duty of loyalty, integrity, fidelity, and to deal fairly with the principal in all transactions. *Johnson v. Brewer & Prichard, P.C.*, 73 S.W.3d 193, 201-02 (Tex. 2002); *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 283-84 (5th Cir. 2007); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Lack, in sworn testimony, admitted to the breach of these duties. First, he testified that as of October 5, 2011, he advised Hunn that he was leaving his employment and such was "already decided" by him. ROA.1923. And, as of that date, he testified he also had an "understanding" that he would complete the

22

residential drawings under contract for Wilson. ROA.1923, pp. 27-28. This was made "absolutely clear" that it was an "understanding or agreement with Dan Wilson" to continue the work. ROA.1925, Tr. p. 34. Yet, after his decision was made to leave Hunn's employment, he copied and converted Plaintiff's AutoCAD files to complete the drawings for Wilson. ROA.1925, Tr. p. 34, 35. And he declined to reveal these acts to his employer prior to October 10, 2011—the date of his termination of employment and his departure from Hunn Designs. ROA.1804. Such was clearly a breach of his duties set forth by the cases cited above.

Lack's testimony unequivocally establishes the "knowing participation" of Wilson in this activity, *i.e.*, their "agreement and understanding." ROA.1923, Tr. pp. 27-28. Moreover, Wilson had to be well joined in this copying and misappropriation: Lack had no other market for the drawings—they were custom homes for Wilson and his potential residential purchasers.

Wilsons' judicial admissions confirm and corroborate their participation. *Indeed, it was their "determined…course of action."* They pleaded:

> 62. Given notice of Hunn's impending breach of the agreement to draft the drawings in a timely manner and that no one at Hunn Design had any knowledge related to the drawings in progress, *Dan Wilson Homes, Inc. determined that the best course of action was to pay Lack to complete the two drawings* that were near completion while paying Hunn Design the rate previously agreed upon as if Lack remained employed at Hunn Design and also to fairly compensate Hunn Design for any work performed on drawings that were not near completion. This *course of action* was necessary to protect the interests of Dan Wilson Homes, Inc.'s clients and would leave Hunn Design in a better

23

position than: a) if Lack remained employed at Hunn Design; b) if another Hunn Design employee completed the drawings…;[2] ROA.1861.

In light of these admissions, Hunn's claim of Wilson's "knowing participation" in Lack's breaches of his fiduciary duties was solidly premised upon and tracked the law clearly announced by the Supreme Court of the State of Texas in *Kinzbach Tool Co. v. Corbett-Wallace Corp.* 160 S.W.2d 509, 514 (Tex. 1942)—a case that has been repeatedly cited by this Court and the courts of the State of Texas, only to be ignored by the District Court below.  There a third party, Corbett, induced Turner, an employee of Kinzbach to enter into a commission contact that was a breach of his fiduciary duties of loyalty and full disclosure. Similarly here, Wilson induced Lack into an agreement to misappropriate and/or use his employer's AutoCAD files to complete residential designs for his potential residential building contracts.  *See also Mabrey v. Sandstream, Inc.,* 124 S.W.3d 302, 317 (Tex. App.—Fort Worth 2003, no pet.); *Darocy v. Abildtrup,* 345 S.W.3d 129, 137-38 (Tex. App.—Dallas 2011, no pet.); *Kirby v. Cruce,* 688 S.W.2d 161, 166-67 (Tex. App.—Dallas 1985); *Villarreal v. Wells Fargo Brokerage Servs., L.L.C.,* 315 S.W.3d 109, 126-27 (Tex. App.—Houston [1st Dist.], 2010); *Denson*

---

[2] Contrary to the suggestions of Wilson's pleadings above, he filed no claim for breach of contract against Hunn nor a defense of justification.  They could not do so as Hunn tendered performance.  ROA.1805 10/11/2011 and ROA.1988, tr. p. 89.

*v. Dallas County Credit Union,* 262 S.W.3d 846, 851 (Tex. App.—Dallas 2008, no

pet.); *Helm Cos. v. Shady Creek Hous. Partners, Ltd.,* No. 01-05-00743-CV, 2007

Tex App LEXIS 5902 at *16 (Tex. App.—Houston [1st Dist.] July 26, 2007, pet.

denied); *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283-84

(5th Cir. 2007).

Moreover, Wilson was well aware of what he was doing.  On October 11,

2011, one day after Lack's termination of his employment, he was explicitly

informed:

> Another reason for my request that you contact your lawyers, is your
> apparent agreement to take the partial developed home plans of Hunn
> Designs, and transfer them to Mr. Lack under some unknown
> arrangement for his completion and in competition with Hunn
> Designs. Surely, as you well know, *those plans are proprietary work
> of Hunn Designs.* Moreover they are also protected under the
> Architectural Works Copyright Protection Act of 1990, the federal
> copyright statute. My understanding is that *your* agreed plans would
> constitute an *infringement* and a *misappropriation* of the intellectual
> property rights of Hunn Designs.  (emphasis added).

Letter of Hunn's attorney, delivered to Defendants on October 11, 2011,
ROA.1832.[3]

---

[3] The date of actual use of Hunn's misappropriated files is hardly relevant as this
Court and the courts of the State of Texas have clearly held an agent has a duty
both during and *after* the termination of the agency "not to use or to disclose to
third persons in competition with the principal trade secrets or confidential
information." *NCH Corp. v. Broyles*, 749 F.2d 247, 254 (5th Cir. 1985 *See also
Rugen v. Interactive Bus. Sys.*, 864 SW.2d 548, 551 (Tex. App.—Dallas 1993, no
writ.); *Johnston v. Am. Speedreading Acad., Inc.*, 526 S.W.2d 163, 166 (Tex.
App.—Dallas 1975, no writ ); *Miller Paper Co., v. Roberts Paper Co.*, 901 S.W.2d
593, 601 (Tex. App.—Amarillo 1995, no writ); Restatement (Second) Agency, §
396.

The claim of "misappropriation" of intellectual property rights in this letter and in Paragraph 50 of Hunn's complaint (ROA. 438-90) was confusing to the District Court who, in footnote 11 of his Order, ROA.2424, acknowledged it was "not clear" why Hunn asserted misappropriation but, in any event, such a claim was "preempted by the Copyright Act."

This conclusion of preemption was also clear error—as manifested by this Court's decision in *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 287-89 (5th Cir. 1999)—a decision which used and applied the term "misappropriation" in two different contexts—the context of confidential information and trade secrets *and* in the context of the law of unfair competition. *See United States Sporting Prod., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied); *Int'l News Serv v. Associated Press,* 248 U.S. 215, 240 (1918).

In the context of confidential information and trade secrets, the *Alcatel* decision at pp. 784-5, confirmed a decision of misappropriation of trade secrets through a breach of a confidential relationship—a result contrary to the decision below.  And significantly, in this case, Hunn first alleged the existence of trade secrets and confidential information in ¶¶ 13(e), 26, 28 of his Complaint. ROA.426, 430, 431.  Then, Hunn demonstrated the existence of the "confidential relationship" by virtue of the employment agreement and the entrustment of his

26

residential business to Hunn. ROA.445 and ROA.1919-2020. Finally, Hunn's declaration clearly established the existence of the trade secret character of misappropriated computer AutoCAD files in his declaration. ROA.2105-7, ¶¶7-11—a declaration which *also distinguished those AutoCAD files from the drawings of the residential designs which are printed from the files and are the subject matter of copyright registrations.* In *Alcatel*, this Court found no preemption, there was none. However, here the District Court below, ignored Hunn's allegations of trade secrets and confidential information, his declaration establishing trade secrets and confidential information and the *Alcatel* decision cited at ROA.1783. Clearly, the District Court's dismissal of his claim of misappropriation of confidential information was error and in deviance with the decisions of the courts of the State of Texas, *i.e., Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *Johnson v. Brewer & Prichard*, P.C., 73 S.W.3d 193, 202 (Tex. 2002); *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 787-88 (Tex. 1958); *Rugen v. Interactive Bus. Sys.*, 864 SW.2d 548, 551 (Tex. App.—Dallas 1993, no writ.).

In asserting misappropriation in the context of unfair competition and to avoid preemption by Copyright Act, 17 U.S.C. § 301 as determined by the District Court below, Hunn's pleading tracked the instructions of the *Alcatel* decision of this Court *supra at* 785-7 regarding "2. Unfair Competition by Misappropriation."

27

Specifically, at ¶ 50 of his Second Amended Complaint, ROA. 438, Hunn combined his unfair competition claim for misappropriation with his claim for breach of a fiduciary relationship to meet the "extra element" requirement for the second type of misappropriation.  In *Alcatel* at p. 787, this Court wrote:

> We evaluate the equivalency of rights under what is commonly referred to as the "*extra element*" test.  According to this test, if the act or acts of DGI about which DSC complains would violate both misappropriation law and copyright law, then the state right is deemed "equivalent to copyright."  *If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie "within the general scope of copyright," and preemption does not occur. (emphasis added).*

Significantly, Hunn's claim also precisely coincided with the decision of the Second Circuit Court of Appeal in *Briarpatch Ltd L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 307 (2d Cir. 2004) in which the court stated:

> With respect to plaintiffs' claims involving breach of fiduciary duty (the conspiracy and aiding and abetting claims that make up counts one and two of the complaint), we are equally certain that *there is no copyright preemption*. While these claims focus on "The Thin Red Line" project, the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it. In other words, the fact that these claims require a finding that there was a breach of fiduciary duty to begin with adds an *extra element that makes the claims qualitatively different from a claim of copyright infringement*. (citation omitted), (emphasis added).

For unexplained reasons, the Court also ignored Hunn's citation of this case at ROA.1784.  But clearly, as a matter of law of two Circuit Courts of Appeal, there was no preemption of Hunn's claim of misappropriation or of "knowing

28

participation" in Lack's breach of his fiduciary duties by Wilson in Lack's breach

of his fiduciary duties.  Judgment for Appellees was clear, manifest error.

**The District Court Misconstrued the Computer Fraud and Abuse Act, 18
U.S.C. § 1030 (g) and Declined to Follow this Court's Controlling Decision.**

In his Complaint, Hunn alleged that Lack's act of accessing Hunn's

computer for his personal benefit and in competition with his employer exceeded

his authority.  The allegations were:

> 34. On information and belief, Defendant Lack well knew or
> should have known that he was not authorized to access the computer
> of Hunn Designs for any purpose other than for his admitted, limited
> purposes " ... for the benefit of HUNN" and certainly not for the
> purpose of using AutoCAD files of Hunn for his own personal benefit
> or the benefit of Dan Wilson Homes, Inc. in competition with Hunn
> Designs in violation of his duties to his employer, the Plaintiff, as set
> forth in paragraph 13 above….
> 35…..
> 36. The foregoing use of said CAD files was in breach of
> Defendant Lack's confidential and fiduciary obligations to Plaintiff
> Hunn, i.e., his duty not to compete with his principal either on his own
> account or for another; his duty of loyalty and fair dealing in good
> faith and solely in his employer's interest, his duty not to solicit
> Plaintiffs customers, his duty not to take and use Plaintiffs files for his
> own interest and the interest of Defendant's Wilson and Wilson
> Homes, Inc., and in breach of his covenant not to solicit Plaintiffs
> customers.

ROA.433-5.

Appellees sought judgment premised on the fact that Lack had permission to

access Hunn's computer.  In doing so, they ignored the proscription of that portion

of the statute that prohibits "exceed[ing] authorized access."   Their motion was

29

also premised upon district court decisions from other circuits—decisions adopted by the District Court below.  Both the Appellees and the District Court erred in their construction of the phrase "exceed[ing] authorized access."

The controlling law of this Circuit is *United States v. John,* 597 F.3d 263, 271-72 (5th Cir. 2010), where this Court stated:

> The question before us is whether "authorized access" or "authorization" may encompass limits placed on the use of information obtained by permitted access to a computer system and data available on that system. We conclude that it may, at least when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime. *To give but one example, an employer may "authorize" employees to utilize computers for any lawful purpose but not for unlawful purposes and only in furtherance of the employer's business.* An employee would "exceed authorized access" if he or she used that access to obtain or steal information as part of a criminal scheme.(emphasis added).

>     and

> While we do not necessarily agree that violating a confidentiality agreement under circumstances such as those in *EF Cultural Travel BV* would give rise to criminal culpability, we do agree with the First Circuit that the concept of "exceeds authorized access" may include exceeding the purposes for which access is "authorized."

Both Hunn and Lack have acknowledged limitations on Lack's access to Hunn's Computer.  First, Lack judicially admitted:

> However, LACK did not take any items from the HUNN office. The files complained of were on LACK's personal computer as that is the computer that LACK was using on the projects so that he could work on the projects while not in the HUNN office, **all for the benefit of HUNN.**

30

Defendant Lack's Second Amended Answer, ROA.253, ¶17.

This known restriction on the use of Hunn's computer files is corroborated and confirmed by Hunn's declaration. ROA.2107, ¶9-10.

In footnote 13 of its Order, the District Court did acknowledge the existence of this Court's decision in *United States v. John*, but concluded that case was different because it was a criminal case. ROA.2429. Yet, there was no material difference:  there, as here, the employee, John, accessed her employer's computer to obtain images of customers' checks containing their account information for a non-employee, her brother, who improperly used it.   Agreeing with the First Circuit Court of Appeals, this Court concluded:

> …we do agree with the First Circuit that the concept of "exceeds authorized access" may include exceeding the purposes for which access is "authorized." Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded. In other words, John's access to Citigroup's data was confined. She was not authorized to access that information for any and all purposes but for limited purposes.

*United States v. John, supra at* 272.

Without question, the District Court committed fundamental error in its dismissal of Hunn's claim by ignoring the judicial admission of Lack's pleading that his work was to be done "all for the benefit of HUNN," and failing to properly apply  the decision of this Court in *United States v. John.*  Clearly, Lack exceeded authorized access.  The decision below should be reversed.

31

**The District Court Erred in its "Take Nothing" Judgment on the Covenant Not to Complete Solicit As It Was in Full Accord and Compliance With The Texas Statute and the Decisions of the Supreme Court of the State.**

At the time Lack executed his employment agreement with Hunn, he simultaneously executed an agreement not to solicit Hunn's customers for a period of two years after termination of his at-will employment. ROA.445-447. With respect to such an agreement, Texas law provides:

> ...[A] covenant not to compete is enforceable *if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made* to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code § 15.50(a).

In rendering judgment for the Appellees, the District Court held:

> Here, neither the employer, Hunn, expressly promised to provide confidential information, nor did Lack, the employee, expressly promise not to disclose confidential information. *This very important distinction cannot be missed.* The rulings in the two cases relied upon by Hunn, as just discussed, clearly had one party or the other making express promises regarding confidential information, thereby implying a contract to the other party. Here, that clearly did not occur. As such, the Court finds that the covenant in this instance is not supported by an "otherwise enforceable agreement" that was more than illusory. See *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 47-49 (Tex. App.—Texarkana 2012, pet. denied). Thus, the covenant is invalid for the reasons argued by the Defendants.

ROA.2435.

32

In reaching this conclusion, the District Court made several errors. First, it ignored Hunn's implied, but essential and non-illusory promise of providing confidential information resulting from Lack's job duties which, as a matter of law, is a sufficient promise to constitute an enforceable agreement. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). Second, Lack's obligation of non-solicitation was ancillary to this enforceable, implied agreement as it provided an adequate and sufficient nexus and basis for Lack's express covenant not to solicit Hunn's customers.

These conclusions are substantiated by Lack's agreed job duties of "Design as needed," "Supervision of drafting and production and *importantly,*" *"Management of spec clients"* as set forth in Lack's agreement. ROA.445-447. Those duties could not have been performed without access to the confidential information because such access was the exclusive method of performing the duties of design creation and management of the client. As Plaintiff declared under penalties of perjury:

> 6.  Substantially all of the architectural design work of the firm is performed and maintained on a computer server...A computer program entitled "AutoCAD" is used by the firms designers to develop the designs by opening a design file with the AutoCAD program and designing the structure...
> 7.  Digital CAD files containing information pertaining to the architectural designs of each residential, commercial and church properties comprise the confidential property of and trade secrets of Hunn Designs.

ROA.2106.

This, the Court below ignored these key facts. Such was a sufficient promise to

provide confidential information and trade secrets as a matter of law:

> When the nature of the work the employee is hired to perform requires
> confidential information to be provided for the work to be performed
> by the employee, the employer *impliedly promises* confidential
> information will be provided…
>
> In the case of an implied contract, however, mutual assent is
> inferred from the circumstances. As one treatise states the rule:
> *"[t]erms are implied not because they are just or reasonable, but
> rather for the reason that the parties must have intended them and
> have only failed to express them ... or because they are necessary to
> give business efficacy to the contract as written."* (emphasis added).

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850
(Tex. 2009).

The District Court's comment of an "important distinction" that Lack did not

expressly promise not to disclose confidential information is without basis in fact

*or* law. Indeed, such a promise was redundant and unnecessary because, as a

matter of state law, every court that has considered the proposition has concluded

that an employee such as Lack had that obligation *without* a written contract or

express promise. Indeed, even this Court has ruled:

> *Even in the absence of a contract* not to disclose confidential
> information, an agent has a duty not to use or communicate
> information given to him in confidence in competition with or to the
> injury of the principal unless the information is a matter of general
> knowledge. (emphasis added).

*NCH Corp v. Broyles*, 749 F.2d 247, 254 (5th Cir. 1985); *see also Miller Paper Co., v. Roberts Paper Co.,* 901 S.W.2d 593, 600-01 (Tex. App.—Amarillo 1995, no writ).

Thus, under state law, Hunn had from Lack a promise of confidentiality. An express promise was unnecessary.

However, instead of this inherent obligation of confidentiality, Lack had made the express written promise that he would not solicit Hunn's clients he was to manage or use the confidential AutoCAD files relating to those clients to gain those clients as his own. This is the promise that was needed by Hunn and it is the express promise that Lack made.

And, importantly, Lack's express promise not to solicit Hunn's clients for two years well satisfies the required "nexus" between the noncompete agreement and the confidential information and Hunn's customer base. As stated in *Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011) at p. 775:

> Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus; and there is no textual basis for excluding the protection of much of goodwill from the business interests that a noncompete may protect.

That was the promise that Hunn needed, and that was what Lack expressly gave. It should be enforced. The ancilliary non-compete agreement, made in consideration of the implied, essential promise to provide confidential information and access to the customers is precisely what was needed to protect against the wrongs actually

incurred in this case.  And under the law, that covenant should be enforced, not summarily dismissed.

**Judgment on Plaintiff's Lanham Act Claim Was Clearly Erroneous.**

Hunn's Lanham Act claim was not novel.  The fact allegations of his pleadings were substantially similar to those of *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998).  Those fact allegations pertaining to this claim are found at ROA.434,¶¶38-39 of Hunn's Second Amended Complaint.

In *Johnson v. Jones*, as here, the defendant obtained the plaintiff-architect's plans, completed or revised them and then asserted that he was the origin of the drawings.  Here, Lack went further, he also claimed copyright and marked the Plaintiff's drawings with ©.  After delivering the drawings to Wilson, they then published this wrongful designation of origin to the City of Lubbock and to all of their subcontractors.  Of this conduct, the Sixth Circuit concluded:

> The present case is slightly different from the run-of-the-mill Lanham Act case, and, as it happens, *much simpler.*  Here, the defendant has not produced a product to which he has applied a mark so like the plaintiff's that the public is likely to believe that the product was produced by the plaintiff.  Rather, the defendant has taken the plaintiff's product and has represented it to be his own work.  *It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product.* (emphasis added).

*Johnson v. Jones, supra at* 503.

and

36

> As noted above, the typical case of deliberate "passing off" involves a defendant's passing off his own product as that of the plaintiff. This, however, is the quintessential "reverse passing off"; here, the defendant is deliberately passing off the plaintiffs product as his own. *If anything, this variety of "deliberate theft of a market holder's goodwill" is more egregious than ordinary passing off, as it involves actual theft.* This is an "exceptional case," because Tosch literally stole Johnson's plans. (emphasis added).

*Id.* at 504 (emphasis added).

The *Johnson v. Jones* case of simplicity and "deliberate theft" was brought to the District Court's attention at ROA.1775-7, ¶¶64-70. Disregarding the Sixth Circuit's conclusion of "deliberate theft," false designation of origin and likelihood of confusion, the District Court, on substantially the same facts, dismissed Plaintiff's claim stating:

> However, nothing in the cited paragraph, or the remainder of the Declaration, indicates how submitting the plans to the City of Lubbock affected interstate commerce and created the likelihood of confusion. Even if the City of Lubbock may have been confused-a contention that Hunn has not supported with evidence, that still does not create any genuine issues of material fact regarding a substantial effect upon interstate commerce. Thus, the Court finds that Plaintiff has failed to create a genuine issue of material fact so as to preclude summary judgment.

ROA.2455.

With respect to the "substantial effect on commerce," this case has substantially the same facts and effects as those of the *Johnson v. Jones* case, and the District Court made no effort to distinguish it. Of greater error, however, is the fact that the pertinent statute, 15 U.S.C. § 1125 does not require a "substantial effect" on

37

commerce.  Instead, this statute is violated solely by a false designation of origin

"in commerce."  Moreover, actual confusion is not required—only a likelihood.

And here, as in the *Johnson v. Jones* case,

> It is difficult to imagine how a designation of origin of a product
> could be more false, or could be more likely to cause confusion or
> mistake as to the actual origin of the product. (emphasis added).

*Johnson v. Jones, supra at* 503.

Clearly, the District Court must be in error where it dismisses a claim in

which, on the same facts, a federal Circuit Court of Appeals concludes that such is

a "deliberate theft."  The decision below should be reversed and remanded for

trial.[4]

### Conclusion

As stated earlier, this is a case of an "abused entrustment" in which a large

custom home builder induced a computer draftsman-employee into a judicially

admitted "course of action" to complete drawings contained in misappropriated

computer files of his former employer and to establish his own drafting business in

competition with his former employer.

---

[4]   In recognition of his obligations to the Court regarding authorities that may be
relevant to this claim, Plaintiff brings to the attention of the Court, its prior
decision of *Gen. Universal Sys., Inc. v. Lee*, 379 F. 3d 131 (5th Cir. 2004) where,
at pages 148-49, this Court discussed the effect of *Dastar Corp. v. Twentieth
Century Fox*, 539 U.S. 23 (2003) on a claim of "reverse passing off." Below,
Defendants waived this argument.  However, if and when properly argued by the
Appellees, Plaintiff will and can properly distinguish this case.

Clearly, this case warrants the most serious consideration.  In doing so, Hunn suggests that the words of the Supreme Court well define the starting point and the seriousness of the matter.  In *E.I. du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100 (1917), the Court, at page 102 wrote:

> Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and *the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. (emphasis added).*

In this case, the reposed trust was not only abused, but the Wilson defendants judicially admitted that it was their determined "course of action."  The Texas Supreme Court in *Kinzbach Tool Co.* denounced the same inducement and "course of action" where Corbett induced Turner, an employee of Kinzbach to breach his duty of loyalty.  Yet, the District Court below found no cause of action!

Similarly, in *United States v. John*, a criminal case, Ms. John was induced to breach her obligations to her employer, to access customer account information of Citigroup's internal computer system for the benefit of her brother, Riley, and she was sentenced to108 months in prison.  Here, after Lack judicially admitted to the "course of action" that resulted in the "exceeding[ing] authorized access," the District Court erroneously concluded there is not even a civil cause of action.

Finally, in *Johnson v. Jones*, the defendant made a false designation of architectural drawings and the Sixth Circuit concluded there was a "deliberate

theft" of goodwill which was an "exceptional case" and it applied the Lanham Act. Here, where both the builder and the designer participated in the false designation of architectural drawings, the District Court incorrectly concluded there was no cause of action under the Lanham Act!

In sum and substance, Plaintiff respectfully submits that the District Court decision was in error and that its decision will wrongfully induce others to 1) participate in a breach of fiduciary obligations, 2) commit a deliberate theft of property and of good will and 3) improperly access protected computers of an employer. Clearly, reversal and remand for justice and correction of these wrongs is not only warranted but mandated by law. More specifically and in view of the fact that all parties and the Court below has agreed that there are no disputed issues of fact, Plaintiff asked this court to enter judgment of liability on Counts II, IV, V and VII and to remand this case for a determination of the remedy. Clearly, reversal and remand for justice and correction of these wrongs is not only warranted but mandated by law. As specific relief, Hunn requests this Court to remand Count IV to the District Court with a mandate to reconsider in light of the law of the State of Texas. Further, and in view of the fact that all agree that there are no genuine issues of fact, but only issues of law, with respect to Hunn's claims of a violation of the Computer Fraud and Abuse Act (Count VII), the Lanham Act (Count II) and Breach of the Covenant not to Solicit Customers (Court V), Hunn

asks this Court to enter judgment of liability against Wilson and Lack on these counts and remand same for a determination of damages and such further relief as may be warranted by law.

Respectfully submitted,

/s/Dorsey L. Baker
Dorsey L. Baker
Attorney for the Plaintiff
4603 11th Street
Lubbock, TX 79416
(806) 792-5868 (Office)
State Bar No. 01571000


Fernando M. Bustos
State Bar No. 24001819
Email: fbustos@bustoslawfirm.com
Dustin N. Slade
Email: dslade@bustoslawfirm.com
Lubbock, TX 79416
Attorneys for the Plaintiff
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
Attorneys for the Plaintiff

## Certificate of Service

I hereby certify that a copy of this document has been furnished to all counsel of record via ECF on the date of filing.

/s/Dorsey L. Baker
Dorsey L. Baker

## <u>Certificate of Compliance</u>

    1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 11765 words as counted by the Microsoft Word program without exclusion of any part.

    2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word, version using the font "Times New Roman, size 14.

/s/Dorsey L. Baker
Dorsey L. Baker
Attorney for Plaintiff Marshall Hunn